This is an appeal from a judgment of the Mobile County Probate Court holding invalid a purported will of Robert F. Perry, deceased. The contest was tried before L.W. Noonan, Probate Judge. We affirm.
 The Dispute
The plaintiffs, Mary and Florida Perry and two persons claiming to be the sons of Robert F. Perry, challenged a purported *Page 172 
will on the basis of an alleged lack of testamentary capacity. The purported will was executed on October 22, 1986. The plaintiffs claimed that Mr. Perry, who at that time was in the last stages of a long bout with cancer, was unable to understand the consequences of the document he executed. Mr. Perry died on November 4, 1986.
Perry was a resident of Mobile County. Described as a robust man during his earlier life, Perry was emaciated and bedridden at the time of his death. Evidence tended to show that he was unable to care for himself and that his mother had moved into his house to care for him.
Perry's wife, Mary Perry, filed a petition for letters of administration and that petition was granted on November 7, 1986. On November 19, 1987, Perry's mother, Zadie Craig, tendered to the probate court a document purporting to be the last will and testament of Robert Perry and filed a petition for letters testamentary naming her as executrix. With the petition for letters testamentary, Craig produced the purported will that became the focal point of this dispute. Subsequently, the petition for letters testamentary was amended to add as persons interested in the estate the two persons claiming to be Perry's sons. These two young men were represented by a guardian ad litem during the subsequent contest of the alleged Perry will. Mary Perry and Florida Perry, the testator's daughter, filed a contest on August 10, 1988, claiming, among other things, that Robert Perry lacked testamentary capacity at the time the purported will was drawn.
The purported will provided as follows:
 "KNOW ALL MEN BY THESE PRESENTS, that I ROBERT PERRY, above the age of nineteen years and residing at 1577 Forest Street, Mobile, Alabama 36605, being of sound mind and disposing memory, do by these presents, make, publish and declare that this is my LAST WILL and TESTAMENT, and by these presents, do hereby revoke all other wills and codicils which may have been made by me at any time heretofore.
"ITEM ONE
 "I hereby nominate and appoint my daughter, Florida V. Perry, Executrix of this my LAST WILL and TESTAMENT, and declare that she shall not be required to give bond for performance of her duties arising hereunder; nor shall she be required to make inventory of the property coming into her hands as such Executrix nor make any report to any Court of her proceedings hereunder.
"ITEM TWO
 "I give, will, devise and bequeath my real property located at 1577 Forest Street, Mobile, Alabama and all things therein, unless specifically excluded elsewhere in this will to my beloved mother, ZADIE CRAIG, for as long as she shall live and upon her death to my brother, THEODORE PERRY, and my cousin, LULA MAE MATTHEWS, share and share alike.
"ITEM THREE
 "I give, will, devise and bequeath to my brother, THEODORE PERRY, all my guns, fishing equipment, the truck, boat and Cadillac.
"ITEM FOUR
 "I give, will, devise and bequeath to my cousin, LULA MAE MATTHEWS, the New Yorker.
"ITEM FIVE
 "I give, will, devise and bequeath to my wife, MARY PERRY, the sum of ONE HUNDRED AND 00/100 ($1.00) [sic] DOLLARS and I give, will, devise and bequeath to my daughter, FLORIDA V. PERRY, the balance of the money in my savings account at First Alabama Bank, my Insurance and my pension from International Paper Company.
"ITEM SIX
 "I give, will, devise and bequeath to my mother, ZADIE CRAIG, all money *Page 173 
deposited in the bank during the month of October, 1986.
 "I, ROBERT PERRY, the testator, sign my name to this instrument this 22nd day of October, 1986, and being first duly sworn, do hereby declare to the undersigned authority that I sign and execute this instrument as my LAST WILL AND TESTAMENT, and that I sign it willingly; that I execute it as my free and voluntary act for the purposes therein expresses [sic]; and, that I am nineteen years of age or older, of sound mind, and under no constraint or undue influence."
It is apparent that this will contest grew out of Mary Perry's dissatisfaction with the provisions made for her in the purported will. She acknowledges that she and Perry had lived apart for a number of years, but alleges that had he been "in his right mind" he would have provided for her in any will he might have made. The two men who claim to be Perry's sons, and who claim to have been openly recognized by Perry as his children, were not provided for at all in the alleged will. The guardian ad litem representing the two young men also contended that Perry lacked testamentary capacity at the time the document was executed.
 Evidence Before The Court
Much testimony was presented on the issue of the validity of the alleged Perry will of October 22, 1986, and Perry's capacity to make a will on that date. As will be shown, the evidence was clearly in conflict.
Zadie Craig, the proponent of the document, did not testify in the contest. Neither did any of the other beneficiaries under the purported will.
While none of the beneficiaries testified, Merceria Ludgood, the attorney who prepared the will, did testify. Her testimony indicated that Annie Pettway approached her with a will that was not prepared by a lawyer but was supposedly dictated by Robert Perry and was typed by a friend of Perry. Ludgood stated that she informed Mrs. Craig that the writing Mr. Perry had dictated was not sufficient as a will under the laws of this state. Ludgood stated that she went to Mr. Perry's home and had Perry tell her what he wanted to include in his will. Ludgood said that Perry did not tell her that he had two illegitimate sons and stated that he had one child by his marriage and that he intended to provide for her. She said that Perry stated that he wished to leave only one dollar to his wife, Mary. Ludgood said that when she questioned Perry concerning the bequest to his wife he stated that he and she had been separated for more than 25 years, that his wife had never before shown any interest in him, and that she had no interest in him at that time. Ludgood stated that she knew of no reason that should prevent the will she had prepared from being probated.
The proponents rested following Ludgood's testimony.
V.R. Vaughn testified first for the contestants. He stated that he had known Robert Perry all of his life and that he considered himself to have been close to Mr. Perry. Mr. Vaughn testified that he had remained in close touch with Mr. Perry after Perry became ill and that he had often visited Perry at his home.
Vaughn testified that Mary Perry left her out-of-state job to return to Mobile to take care of Mr. Perry in 1986. Furthermore, Vaughn stated that although Robert and Mary Perry were separated, they remained in close touch with each other and often visited. He said Mrs. Perry provided financial assistance to Mr. Perry.
Vaughn stated that, following Mrs. Perry's return to Mobile, Lula Mae Matthews, Zadie Craig, and Theodore Perry tried to remove Mrs. Perry from the Perry home by telling Mrs. Perry that they intended to take Mr. Perry to New Orleans. Vaughn stated that these people told Mrs. Perry to leave the house because they were going to lock it up. Vaughn stated that after this encounter he took Mrs. Perry to stay with a friend, and that when Mrs. Perry was persuaded to leave the house, Mr. Perry's mother, Zadie Craig, moved in.
Vaughn stated that up until August 1986 Mr. Perry could still feed himself. Vaughn *Page 174 
testified that by September of that same year, Perry could no longer recognize him and "was just there." Vaughn stated that by October there was no way Perry could recognize even a deed or handle a check book.
Monroe James then testified for the plaintiffs. He stated that he had known Mr. Perry for some 25 or 30 years. James testified that he often visited Mr. Perry and that he often saw Mary Perry during those visits. James said that Mr. Perry had become unable to take care of his business affairs at least two weeks prior to his death.
Rev. G.L. King testified next for the plaintiffs. He stated that he had known Mr. Perry for over 20 years; that he visited Mr. Perry two or three times a week beginning in the summer prior to his death; that during his visits to the Perry house in the summer before Mr. Perry's death, Mrs. Perry was with Mr. Perry; that Mr. Perry was "completely out" at least a month before his death; and that Mr. Perry "wasn't any more than a baby." In response to a question from the Court, Rev. Mr. King replied that he thought that Mr. Perry did not even know he was in this world as of October 22, 1986.
Fannie Dennis, a friend of Mr. Perry's, testified that she last saw Mr. Perry a couple of weeks before his death. She stated that at that time Mr. Perry was semi-conscious and could not be expected to understand business transactions. She stated that Mr. Perry had difficulty recognizing her, but that at times he might recognize her voice. Mrs. Dennis stated that Mary Perry came to live with her following the threats to move Mr. Perry to New Orleans, and that Mrs. Perry did not return to the Perry home because she was afraid to go back there.
Ansonia Smith, the mother of one of the two men claiming to be Mr. Perry's sons, testified that she visited Mr. Perry on several occasions before his death. She said that on one occasion, some four weeks prior to his death, Mr. Perry was delirious and talked about "things that didn't really make any sense." She said that during a visit just three weeks prior to his death, Mr. Perry was lying on his bed with his eyes open staring at the ceiling and failed to recognize either Smith or her son. Smith testified that Zadie Craig often refused to let her in the house to see Mr. Perry. Mrs. Smith stated that on several occasions Zadie Craig told her that Mr. Perry was asleep when he in fact was not, and that on other occasions, Mrs. Craig refused to let her in the house at all. On at least one occasion, the two had a verbal confrontation after Mrs. Smith sneaked into Mr. Perry's room to visit while Mrs. Craig was distracted.
Mary Perry was the final witness for the plaintiffs. She testified that she had married Robert Perry in 1958 and that she had been married to him from that time until his death. Mrs. Perry testified that she and her husband did live apart, because she was a school teacher and she had to go where the best job was. However, she said that they stayed in close contact with each other and visited each other when they could. Mrs. Perry also testified that she often gave Mr. Perry money to help defray the expenses of his cancer treatments.
Mrs. Perry testified that in 1986 she was asked by Mr. Perry to come to Mobile to stay with him. Mrs. Perry stated that she dressed wounds from surgery, performed hygienic services, and generally saw to Mr. Perry's needs. Furthermore, Mrs. Perry said, her husband told her that he had no relationship with his mother, Zadie Craig, and that Mrs. Craig had not been in his home for over three years. Mrs. Perry said that during Mr. Perry's illness, Theodore Perry, Mr. Perry's brother, would often take personal property from Mr. Perry without his permission. Mary Perry stated that someone had broken into a strong box which Mr. Perry kept in his home.
Mrs. Perry also testified to some bizarre occurrences during Mr. Perry's illness. She stated that on one occasion, Zadie Craig and some relatives from New Orleans came to the house and stated that they were going to take Mr. Perry to New Orleans. This trip was to be made so that Mr. Perry could be carried across a body of *Page 175 
water to break the "spell" that he was under. Mrs. Perry stated that she left the house on this occasion because she was afraid. Mrs. Perry said that Zadie Craig and the other relatives made it clear to Mrs. Perry that she was not to return. On another occasion, Mrs. Perry said, Zadie Craig came to the house and sprinkled some sort of dust on the floors. Mrs. Perry stated that Mrs. Craig did this to keep Ansonia Smith out of the house.
Annie Pettway, a witness to the alleged will, was called by the proponents to testify at a subsequent proceeding due to her absence at trial. This procedure was stipulated to by all of the parties. Mrs. Pettway stated that Robert Perry's "expression" was that Mary Perry was not his wife. Moreover, she stated, Mr. Perry would become "aggravated" if Mrs. Perry was referred to as his wife. Mrs. Pettway stated that despite his illness, Mr. Perry did "have his rational mind" at the time the will was executed, and that he understood what he was doing. She stated that Mr. Perry was weak but that he always recognized her when she came to visit. She stated that Mr. Perry was not forced to sign the will. Mrs. Pettway stated that the idea of going to New Orleans was Mr. Perry's idea, because he wanted to get away from Mary Perry.
 Holding
The parties agree that this case is controlled by the "ore tenus" rule. Under that rule, when a court hears ore tenus evidence in a nonjury case, its ruling based on that evidence is presumed correct and will be overturned only if clearly erroneous or manifestly unjust. Parker v. Barnes, 519 So.2d 945
(Ala. 1988); Reliance Insurance Co. v. Substation ProductsCorp., 404 So.2d 598 (Ala. 1981). Its findings of fact will not be disturbed on appeal if they are supported by the evidence or any reasonable inference therefrom. First Alabama Bank ofMontgomery, N.A. v. Coker, 408 So.2d 510 (Ala. 1982). The presumption of correctness is especially applicable where, as here, the evidence was conflicting. Leslie v. Pine Crest Homes,Inc., 388 So.2d 178 (Ala. 1980). The weight to be given the witnesses' testimony was for the trial judge, because he had the opportunity to view the witnesses and their demeanor. Jonesv. Estelle, 348 So.2d 479 (Ala. 1977).
It is presumed that every person has the capacity to make a will. Johnston v. Johnston, 174 Ala. 220, 227, 57 So. 450, 452
(1912). Because of the presumption of capacity, this court has stated:
 " 'The burden is on the contestant to show incapacity at the time the will was made and insanity prior to that time, unless of a permanent character, raises no presumption of insanity at the time the will was made.'
 "King v. Aird, 251 Ala. 613, 617, 38 So.2d 883, 887
(1949). Unless the contestant presents evidence that the testatrix suffered from a permanent type of insanity prior to the execution of the will (which was not shown in this case), the contestant's burden of proof is met when the [factfinder] is reasonably satisfied from the evidence that the testatrix did not have testamentary capacity at the time she executed the will.
 "When mental capacity is at issue, the factual inquiry must necessarily be of the broadest range:
 " 'Evidence is competent to prove conduct and language at various times and places indicating an unhealthy mental condition, and the more extensive the view the safer is the determination reached.'
 "[Tucker v. Tucker, 248 Ala. 602, 610, 28 So.2d 637, 644 (1946).] Thus, evidence offered as to the mental and physical condition of the testatrix, either before or immediately after execution of the will, is admissible since it tends to indicate her condition when the will was signed. Likewise, testimony regarding the testatrix's 'conversations, deportment, acts, and appearance' has been found to be competent on the issue of testamentary capacity."
Fletcher v. DeLoach, 360 So.2d 316, 318 (Ala. 1978). (Citations omitted.)
In this case, we find that there was sufficient evidence for the trial judge to find *Page 176 
that Robert Perry lacked testamentary capacity at the time he signed the purported will. Numerous witnesses stated under oath that he was seriously incapacitated both physically and mentally near that time. Witnesses stated that he was "just there" and that he "didn't know that he was in this world." While the evidence may have been conflicting, that conflict was for the court to weigh. Jones v. Estelle, supra.
Based upon the foregoing, we conclude that the trial court did not err in finding that Robert Perry lacked testamentary capacity at the time the purported will was signed. Therefore, the judgment of the trial court based on that finding is due to be, and it hereby is, affirmed.
AFFIRMED.
JONES, SHORES, HOUSTON and KENNEDY, JJ., concur.