ON APPLICATION FOR REHEARING
RUSSELL, Judge.
This court’s original opinion, which was released on June 12, 1992, is withdrawn, and the following is substituted therefor:
Initially, this case was dismissed on appeal as untimely filed. On rehearing, Theron Velpio Smith asserts that the appeal was timely filed and that the error committed was due to delay and misinformation from the circuit court clerk’s office. If such assertions are true, Smith’s appeal should be reviewed on the merits. While we find Smith’s assertions on rehearing to create an inference of probability, we particularly note that Smith fails to produce any affidavits in support of his assertions. Nonetheless, in the absence of opposition by the State Department of Revenue (Department) to Smith’s assertions on rehearing, we elect to withdraw our original opinion and to decide the case on its merits. Our policy is to favor the adjudication of cases on their merits. Cockrell v. World’s Finest Chocolate Co., 349 So.2d 1117 (Ala. 1977); State ex rel. P.A.W. v. P.A.D., 591 So.2d 98 (Ala.Civ.App.1991).
In March 1989 the Department entered a final jeopardy assessment against Theron Velpio Smith in the amount of $7,493 pursuant to § 40-29-91 and §§ 40-17A-1 through -16, Ala.Code 1975, of the Drugs and Controlled Substances Excise Tax Act (Act). Smith appealed to the trial court. The trial court affirmed the final jeopardy assessment. Smith appeals, contending that the trial court erred in affirming the final jeopardy assessment. We affirm.
The record reveals that in January 1989 Smith and his son, Michael, were arrested for the sale of marijuana and for possession of other controlled substances, which consisted of 16.22 grams of cocaine and 98.58 grams of marijuana. Drugs were found on the premises and in the pocket of the shirt that Smith was wearing. Money marked for identification, which was used for the purchase of the marijuana, was found in the pocket of Smith’s pants. Smith was convicted of the unlawful distribution of a controlled substance.
Smith testified that he had no knowledge or control of the substances; that he was the lessee of a grocery store, which he sublet to Michael; and that, because Mi *1060 chael had developed a cocaine problem and had been in financial difficulties, he had lent him $8,000 to operate the store. He further testified that he was in the store on a daily basis to monitor the money. Smith stated that, while he was in the store on the evening of the arrest counting the money from the store’s sales, he observed a man whom he now knows to be an undercover agent talking to Michael and that he saw Michael make some change out of the cash register. Shortly after the agent left, law enforcement officials entered and searched the store and arrested Smith and Michael. Smith stated that as he was leaving the store, he put on one of his shirts, which was normally left hanging in the store. He stated that he was unaware that there was cocaine in the pocket. Smith admitted that the agent who purchased the marijuana testified in Smith’s criminal trial that Smith handed Michael a bag of the drug out of a brown paper bag at the time of the purchase.
Michael testified that he sold the agent $35 worth of marijuana and that he placed two $20 bills used for the purchase in the cash register and gave the agent $5 in change. He pleaded guilty to the sale. Michael further stated that Smith took some money out of the register as Smith was getting ready to leave the store and that Smith was wearing the same clothes when he was arrested as when he arrived at the store. On questioning, Michael admitted that the agent testified at the criminal trial that Michael handed Smith the money that the agent paid for the marijuana and that Smith put the money in his pocket.
An enforcement agent with the Alcoholic Beverage Control Board’s Enforcement Division testified to finding marijuana and cocaine in a number of places in the store, including a pack of cigarettes containing eight bags of cocaine and a small set of scales that were found in Smith’s shirt pocket. He further testified that the two marked $20 bills were found in the pocket of Smith’s pants.
Smith contends that the trial court erred in affirming and finding that he was a dealer as defined in § 40-17A-1, Ala.Code 1975, when he was convicted of selling only 5.4 grams of marijuana and there was only a small amount of cocaine found in the shirt pocket, of which he denies knowledge, and when, he claims, the evidence did not show that he constructively possessed the remaining amount of substances found in the store.
Section 40-17A-l(3) defines “dealer” as follows:
“Dealer. A person who in violation of Alabama law manufactures, produces, ships, sells, uses, distributes, transports, or imports into Alabama or in any manner acquires or possesses more that 42V2 grams of marihuana, or seven or more grams of any controlled substance, or ten or more dosage units of any controlled substance which is not sold by weight, or dosage units, shall include the weight or dosage units of the substance whether pure, impure, or diluted, in the dealer’s possession.”
Section 40-17A-4 provides that “[n]o dealer may possess, distribute, sell, transport, import, transfer, or otherwise use any marihuana or controlled substance upon which a tax is imposed by section 40-17A-8 unless the tax has been paid on the marihuana or other controlled substance as evidenced by a stamp or other official indicia.” “Possession” is defined by § 40-17A-l(7), for the purposes of Chapter 17A, “to include either actual possession, or constructive possession, or a combination of both actual and constructive possession.”
The standard of review in this matter is stated in pertinent part in § 40-2-22 as follows:
“The assessment made by the department of revenue shall prima facie be correct, and where the appeal is taken by the taxpayer the burden shall be on the appellant to show that such assessment is incorrect. The circuit court or the supreme court of Alabama on appeal to it may, if it is of the opinion from all the evidence that the assessment as made is either too high or too low, fix the amount *1061 of such assessment. The court shall hear such appeals according to its own rules and methods or procedure so far as practicable and shall decide all questions both as to the legality of the assessment and the amount thereof.”
The taxpayer has the burden on appeal to show that the final assessment is incorrect. Rutledge Petroleum Corp. v. F & W Trucking, 545 So.2d 60 (Ala.Civ.App.1988). Where the evidence has been presented ore tenus, the trial court’s ruling based on that evidence is presumed correct and will be overturned only if clearly erroneous or manifestly unjust. Craig v. Perry, 565 So.2d 171 (Ala.1990).
Smith cites Grubbs v. State, 462 So.2d 995, 998 (Ala.Crim.App.1984), for the proposition that “[w]hen constructive possession is relied upon, the State must prove knowledge of the prohibited substance beyond a reasonable doubt.” While we note that Grubbs is a criminal case concerning the conviction for the unlawful possession of controlled substances and the present case is a tax assessment case, Grubbs also provides as follows:
“While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Generally, the circumstances that provide that connection include:
“ ‘(1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that an illicit drug will be found; (5) evidence that debris of the contraband was found on defendant’s person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.’ ”
Grubbs, 462 So.2d at 997-98 (quoting Temple v. State, 366 So.2d 740 (Ala.Crim.App. 1978)). The above are general statements; however, the kinds of circumstances which may connect the defendant to the contraband are unlimited and depend on the facts of each particular case. Id.
In the present case the circumstances were enough to convince the trial court that Smith was more than an innocent bystander. The evidence included cocaine and marked bills from the sale, which were found in Smith’s clothing; testimony at the criminal trial that Smith took part in the sale; and evidence that, although Smith had sublet the store to Michael, he still was there every day and retained control over the money. In view of the above, we hold that the trial court’s judgment is not clearly erroneous or manifestly unjust. Therefore, the judgment is due to be affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING GRANTED; AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur,