RUSSELL, Judge.
The South Alabama Seafood Association, its president, and two members (appellees) filed a complaint, seeking to enjoin the Marine Resources Division of the Alabama Department of Conservation and Natural Resources (Department) from preventing public access to certain oyster reefs located in Heron Bay and leased by Oliver F. Kuppersmith to Lindon C. Johnson (appellants). The ap-pellees claimed that the areas subject to the appellants’ lease were “natural oyster reefs” within the meaning of § 9-12-21, Ala.Code 1975⅛ and were therefore not subject to private leasing. The appellants claimed, however, that these areas contained only “artificial” oyster reefs, which, they claim, may be leased between private individuals. They counterclaimed for a judgment declaring that the subject oysters and oyster beds were the property of Kuppersmith and appropriately the subject of a private lease.
In January 1991 the Montgomery County Circuit Court granted a preliminary injunction allowing public access and prohibiting the Department from denying public access to the areas in question. In September 1991, following an ore tenus proceeding, the trial court issued a final order, wherein it found that the leased area was a “natural oyster reef’ and, therefore, that public access should be allowed; accordingly, the trial court permanently enjoined the Department from denying public access to the areas. The trial court also found that all of Heron Bay meets the requirements for a natural oyster reef. The appellants filed a timely notice of appeal, contending that the trial court incorrectly applied the law to the facts in determining that the leased area is a “natural oyster reef.” We affirm in part, reverse in part, and remand.
The record reveals that the Department enforced the private lease signs posted by appellant Johnson in Heron Bay. The appel-lees and other oystermen testified that Heron Bay is the only area in Alabama that is suitable for gathering oysters during bad weather conditions and that the enforcement of the private lease meant that licensed oys-termen in Alabama were prohibited from gathering oysters in inclement weather. They claimed that they had gathered oysters in Heron Bay for a number of years, as had their parents and grandparents before them.
The appellees presented two expert witnesses. Dr. Barry Vittor testified that, based on the biological definition, rather than the legal definition, Heron Bay is a natural oyster reef. He stated that Heron Bay is a continuous biological community that supports, or has the ability to support, oysters. He further testified that a natural reef would have the suitable substrate to support oysters and that it could be enhanced by man’s activities, such as disbursing oyster shells in the area.
Dr. George Frederick Crozier testified that Heron Bay is a typical natural oyster-producing bottom and that he has no knowledge of the planting of live oysters in Heron Bay. He stated that, because the entire bottom of Heron Bay is suitable for growing oysters, Heron Bay is a natural oyster reef. However, he did not know what quantities of oysters were growing there. He further stated that oysters were being produced in Heron Bay “before the Indians found it” and that an owner with riparian rights cannot take an existing natural reef from the public.
James D. Martin, commissioner of the Department, testified that Heron Bay Reef A is the only public reef in the area that is the subject of this action. He further stated that the Department last had oysters planted in 1990 and that the appellees did a lot of the planting.
Appellant Kuppersmith testified and presented leases to show that he leased his “oyster bottoms” in Heron Bay to Lindon *403 Johnson in March 1990 and that Johnson agreed to plant oyster shells and “seed oysters” pursuant to good conservation practice. He further testified that the property had been leased to the Department from 1956 to 1981, a period of twenty-five years, at which time the lease was not renewed. The Department’s lease allowed the public to take oysters from the leased area as fixed by regulation and gave the Department the right and privilege to re-establish the oyster beds in the area. Kuppersmith also testified that, prior to that time, the property was leased by his father to the Heron Bay Community Club, that it had the right and privilege to establish and develop the oyster beds, and that all the leases gave the lessor the exclusive title to the oyster beds, free from the obligation to pay the lessees for any development or improvement of the beds. He further testified that, as far as he knows, an area extending 600 yards into Heron Bay from the shoreline that he owns covers all the waters of Heron Bay.
An employee with the Marine Resources Division of the Department testified that he helped supervise the planting of shells in 1990 and that the planting was done by the Association under contract with the state. He further stated that some of the shells were planted in the area claimed by the appellants.
A surveyor with the Department for twenty-two years referred to a survey of the oyster and shell resources of Alabama prepared by him in 1971 and stated that Heron Reef A and Heron Reef B are the only natural reefs in the northeast arm of Heron Bay.
Witnesses who had gathered oysters for a number of years were presented by the appellants and testified that the mud bottom of Heron Bay absorbs oyster shells over a period of years, which requires further planting of shells for oysters to regenerate.
Appellant Johnson testified that, since he leased the area, he had planted more than eight dump truck loads of oyster shells in Heron Bay, that he had found no evidence of a continuous oyster reef greater than one acre in size, and that his lease excluded the rights to Heron Bay Reef A.
Dr. Edwin Cake, an expert witness in the area of oyster biology presented by the appellants, testified that a natural oyster reef would be very thick and “v” or “cone” shaped, with the earliest oysters at the bottom sunk in the sediment, as opposed to an oyster bed that is flat and consistent in thickness. He performed a detailed survey and analysis of the area, concluding that 54% of the area was devoid of oysters, that only 1.1% of the oysters were of marketable size, that the remainder were predominantly young seed oysters that settled during the late 1990 spawning and settling season, that in a natural oyster reef oysters of all ages would be found, and that there was not a natural oyster reef in the area. He further stated that a plain, sandy bottom was not a natural oyster reef and that the surveys performed by Dr. Vittor and Dr. Crozier were preliminary surveys because they were not systematic, did not cover the entire bay, and were done without quantification, i.e., there were no notes, no photographs, and no reports.
An oysterman called as a witness by the appellants testified that he was familiar with Heron Bay and that, in his opinion, there were not sufficient oysters in Heron Bay to warrant fishing for them with hand tongs for the last five years. Another witness testified that four years ago there were insufficient oysters in the area to make a living. Other oystermen testified that they had caught oysters in every two hundred by two hundred foot section of Heron Bay and that the lease means that they cannot oyster in Heron Bay when the weather is bad; therefore, they said, their ability to earn a livelihood is affected.
The appellants contend that the trial court incorrectly applied the law to the facts when it determined that the leased areas are “natural oyster reefs” within the meaning of § 9-12-21, Ala.Code 1975. They claim that the trial court misapplied the provisions of §§ 9-12-22 and -23 and misapplied the statutory scheme contemplated in § 9-12-23 to the facts of this case.
Section 9-12-21 defines a natural oyster reef as follows:
*404 “A natural oyster reef is declared and defined as not less than one acre in continuous area of any bottoms of any bay, sound, bayou, creek, inlet or any other body of salt or brackish water on which oysters grow naturally, or have grown naturally, in quantity sufficient to warrant fishing for them with hand tongs as a means of a livelihood within a period of five years next preceding the time at which said matter may be presented for consideration and determination by the director, marine resources division of the department of conservation and natural resources. But in no case shall an oyster bed be declared or defined to be a natural oyster reef when such bed is located within the limits where the owners of land fronting on such waters where oysters may be grown have the right to create and have created, by artificial means such as planting oysters or oyster shells or by any other means, culture grounds for the growth of oysters and have by these means caused the bottoms on which such beds are located to become hardened so that oysters will grow thereon naturally even though such bed so created exceeds one acre in continuous area and even though after these beds have been artificially created oysters grow naturally thereon, or have grown naturally thereon, in quantity sufficient to warrant fishing for them with hand tongs as a means of livelihood within the period of five years next preceding the time at which said matter may be presented for consideration and determination by the director, marine resources division of the department of conservation and natural resources.”
(Emphasis supplied.)
Section 9-12-22 provides:
“All the beds and bottoms of the rivers, bayous, lagoons, lakes, bays, sounds and inlets within the jurisdiction of the state of Alabama are the property of the state of Alabama to be held in trust for the people thereof, but the owners of land fronting on such waters where oysters may be grown shall have the right to plant and gather same in the waters in front of their land to the distance of 600 yards from the shore measured from the average low water mark_ No riparian right shall vest in any person to any part of the natural and public reefs; provided, that the department of conservation and natural resources shall have authority to regulate the time, manner, means or place or places for planting oysters or oyster shells.”
(Emphasis supplied.)
Section 9-12-23 provides:
“Should any privately leased riparian bottoms be subsequently determined to be natural oyster reefs, said lease or leases shall be canceled by the commissioner of conservation and natural resources; and, from the ruling so cancelling such lease or affecting the riparian rights, any person aggrieved may prosecute an appeal to the circuit court of the county in which the alleged natural reef is situated.”
Regarding § 9-12-21 and the statutory definition of a natural oyster reef, the appellants first claim that the trial court must have applied the term “continuous area” to the word “bottoms,” rather than to the word “reef’; accepted a scientific definition, rather than the statutory definition, of “natural oyster reef’; and included areas where oysters had never grown within the definition of a natural oyster reef when it found that the entire bottom of Heron Bay is a natural oyster reef.
The appellants next claim that no evidence was presented concerning the factors that would indicate that oysters grow in quantity sufficient for oystermen to make a living by hand tonging for oysters and that the criteria were not fulfilled.
They additionally claim that the subject oyster beds are exempted by § 9-12-21, which exempts oyster beds that are within areas where riparian rights vest and the owner has cultivated the beds. They refer to § 9-12-22, wherein the owners of land fronting on the waters where oysters may be grown have the right to plant and gather the oysters in the waters in front of their lands. They argue that even artificial reefs that presently grow oysters naturally in the riparian area, and which are cultivated by the owners, are subject to exclusive rights.
*405 The appellees respond by arguing that, although owners of land fronting on waters where oysters may be grown have the right to plant within six hundred yards of the shore, according to § 9-12-22, no riparian rights vest in anyone to any part of the natural and public oyster reefs. They claim that, therefore, the owner may create exclusive artificial oyster beds only where no natural and public reefs exist.
They further claim that the trial court’s determination that the bottoms of Heron Bay constitute a natural oyster reef is subject to the ore tenus rule and, therefore, is presumed correct and will be affirmed if supported by any credible evidence. Keeton v. Bank of Red Bay, 466 So.2d 937 (Ala.1985). Because the evidence was conflicting, they claim that the presumption of correctness is particularly applicable. Craig v. Perry, 565 So.2d 171 (Ala.1990).
The trial court in its order found in part that neither the appellants nor anyone acting in their behalf acted in any substantial way to plant oysters within six hundred yards of the low water mark, or to create any oyster beds, and, therefore, that the oyster reefs within the area of riparian rights were not the result of the efforts of the appellants. It further found that the area leased to appellant Johnson was an “area of uncertain description” and is a natural oyster reef.
Although the evidence was conflicting, we find that there was credible evidence that the appellants, or others acting in their behalf, did not “create ... by artificial means such as planting oysters or oyster shells or by any other means, culture grounds for the growth of oysters and have by these means caused the bottoms on which such beds are located to become hardened so that oysters will grow thereon naturally,” § 9-12-21, and that the area leased was of an uncertain description. The evidence variously concerned Heron Bay, all of Heron Bay, and the northeast arm of Heron Bay. Therefore, we find that the ore tenus presumption applies to these findings.
Not only are the findings presumed to be correct if they are supported by credible evidence, but the presumption is particularly appropriate where witnesses before the trial court refer and point to exhibits and maps. Watson v. Herring, 549 So.2d 33 (Ala.1989); Washington v. West, 567 So.2d 1361 (Ala.Civ.App.1990).
Concerning the riparian rights of owners of land to gather oysters, the Alabama Supreme Court has stated the following:
“It is clear, under the law, that ownership of the property fronting the water in which the oysters are planted, and opposite to said beds, is essential to the right to gather the oysters. It is equally clear that, after the owner plants, he would have such a right in the oysters as would be the subject of transfer or assignment, or which would enable his personal representative or heir to gather and market in case of his death.”
Cleveland v. Alba, 155 Ala. 468, 472, 46 So. 757, 758 (1908) (emphasis supplied). In addition, an owner with riparian rights “has an exclusive right to gather oysters from reefs planted by him.” Havard v. State, 220 Ala. 359, 360, 124 So. 915 (1929) (emphasis supplied).
In the present case we hold that, because there was credible evidence to indicate that the appellants, or their predecessors, did not create “culture grounds” for the growth of the oysters, the trial court properly held that the lease should not be enforced.
However, regarding the trial court’s finding that all of Heron Bay is a natural oyster reef, we agree with the appellants that, because the statutory definition of a natural oyster reef was not satisfied, the trial court misapplied the law to the facts. We do not find that sufficient evidence was presented concerning the factors that would indicate that oysters grow within the subject area “in quantity sufficient to warrant fishing for them with hand tongs as a means of a livelihood within a period of five years next preceding the time at which said matter may be presented for consideration.” Although witnesses testified that the inability to oyster in Heron Bay in bad weather affected their ability to earn a livelihood, we hold that this testimony is not sufficient to satisfy this criterion. Absent such satisfaction, the statuto *406 ry definition of a “natural oyster reef’ has not been met. To hold otherwise would likely render the statutory scheme inoperative and preclude the future exercise of landowners’ riparian rights, as provided by statute.
The judgment is due to be affirmed in part, reversed in part, and the case remanded with instructions for the trial court to enter an order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THIGPEN, J., concurs.
ROBERTSON, P.J., concurs in part and dissents in part.