MÓORE, judge.
First United Security Bank and Paty Holdings, LLC, appeal from a judgment of the Tuscaloosa Circuit Court (“the trial court”) determining that Wayne Allen Russell, Jr., was entitled to the excess funds received by Tuscaloosa County from the sale of certain property owned by Russell (“the property”) for unpaid taxes.
- Procedural History
On December 30, 2010, First United Security Bank filed a verified complaint against W. Hardy McCollum, in his capacity as Tuscaloosa County Judge of Probate, and Peyton Cochrane, in his capacity as Tuscaloosa County Tax Collector, seeking, among other things, a judgment declaring that it was entitled to the excess funds Tuscaloosa County received at the sale of the property for unpaid taxes. The, complaint was later amended to add Russell as a defendant and Paty Holdings, LLC, as a plaintiff.
The case was submitted to the trial court for a decision upon the parties’ briefs and the following joint stipulation of facts:
“1_First United Security Bank is a banking corporation doing business in Tuscaloosa County, Alabama.
“2..Paty Holdings, LLC is-a limited liability company formed in Tuscaloosa County, Alabama and is a . wholly *368 owned subsidiary of First United Security Bank.
“3. The Defendants, , W. Hardy McCollum in his capacity as Tuscaloosa County Judge of Probate and Peyton Cochrane in his capacity as Tuscaloosa County Tax Collector, are public officials of Tuscaloosa County, Alabama and are over the age of nineteen years. The Defendant Wayne Allen Russell, Jr. is an individual over the age of nineteen years and is a resident of Tuscaloosa County, Alabama.
“4. On or about February 15, 2002, Wayne Allen Russell, Jr. ... executed a note and mortgage' in favor of First United Security Bank— Said mortgage was recordéd in the Probate Records of Tuscaloosa County-
“5. On May 25, 2010, ... certain property subject to the bank’s mortgage (Parcel # 63-25-09-30-0-001-008.020 and Parcel # 63-25-09-30-0-001-008.014) were sold at a tax sale due to unpaid 2009 property taxes.
“6.... Parcel #63-25-09-30-0-001-008.020 sold to a third party, Alabama Widespread Investments, LLC, for the amount of $26,000.00 which included an excess bid in the amount of $ 17,833.45.
“7.... Parcel #63-25-09-30-0-001-008.014 sold to a third party, Alabama Widespread Investments, LLC, for the amount of $ 16,000,00 which included an excess bid in the amount of $ 14,471.67.
“8.... First United Security Bank assigned its foreclosure bid rights to ... Paty Holdings, LLC.... Paty Holdings, LLC was the highest bidder at [a] foreclosure sale [on July 8, 2010,] with a bid in the amount of $2,381,790.00 and recorded a foreclosure deed in the Office of Probate, Tuscaloosa County, Alabama in Deed Book 2010, Page 11231. The bid amount equaled the amount of [Russell’s] indebtedness to the bank.
“9.. .■. First United Security Bank obtained the amounts to redeem the property taxes on both parcels good through December 30, -2010. The amount to redeem Parcel #63-25:-09-30-0-001-008.020, inclusive of the 2010 property taxes due, is $27,820150 with interest accruing at the rate of $260.00 per month, and the amount to redeem Parcel # 63-25-09-30-0-001-008.014, inclusive of the 2010 property taxes due, is $17,120.50 with interest accruing at the rate of $160.00 per month. Both redemption amounts included the excess bids totaling $32,305.12.
“10.... W. Hardy McCollum as Tuscaloosa County Judge of Probate and Peyton Cochrane as Tuscaloosa County Tax Collector informed [First United Security Bank and Paty Holdings, LLC,] that [they] must pay the excess bids in order to redeem the property taxes but that [they] would not be entitled to a refund of the excess bids. Instead, [McCollum and Cochrane] asserted that the excess bids to be paid by [First United Security Bank and Paty Holdings, LLC,] will be made payable to .., Russell
“11. .[First United Security Bank and Paty Holdings, LLC,] contend that the excess bids should be refunded to them.... Russell ... conten[ds] that the excess bids should be refunded to him.... W. Hardy McCollum and Pey-ton Cochrane in their official capacities contend that the excess bids should be refunded to ... Russell ... and also assert that Mr. Russell can quit claim his interest in the properties at any time to Tuscaloosa County and be refunded the excess bids. [First United Security . Bank and Paty Holdings, LLC,] dis-puten that this procedure is in accordance with Alabama law.”
*369 The parties subsequently stipulated that Black River Holdings, LLC, “the current owner” of the property, had proposed to redeem the property and had assigned any rights it had to the excess funds to First United Security Bank. The parties also stipulated that the excess tax-sale. proceeds were to be held pending the trial court’s determination of the case.
On May 25, 2012, the trial court entered a judgment, stating:
“1. The primary issue in this case is ... between ... First United Security Bank and Paty Holdings, LLC, and ... Wayne Allen Russell, Jr. who qualifies as the ‘owner’ or the ‘person legally representing such owner’ under Ala; Code [1975,] Section 40-10-28. In First Union National Bank of Florida v. Lee County Commission [, 75 So.3d 105] (Ala.... 2011), the Alabama Supreme Court addressed this very issue when it concluded ‘that when the' Legislature directs in Section 40-10-28 that the excess funds from a tax sale shall be paid over to the owner or his agent, the term ‘owner’ means ‘the person against whom taxes 1 on the property are assessed.’ Under the Stipulated Facts of the parties, that person would be ... Wayne Allen Russell, Jr.
“2. [First United Security Bank and Paty Holdings, LLC,] argue that the result in this case should be different from that in First Union National Bank, because unlike the mortgagee in First Union National Bank, ■ there had been a foreclosure by the mortgagee in this case. Thus, in this case [First United Security Bank and Paty Holdings, LLC,] contend that as the foreclosing mortgagee, ... First United Security Bank is the full owner of the subject property. This argument would be persuasive if the foreclosure had occurred prior- to the tax sale, as it is clear from the opinion in First Union National Bank that the Supreme Court was referring to a foreclosure which occurred pri- or to the tax sale and not after the tax sale as occurred in this ease.
“3. [First United Security Bank and Paty Holdings, LLC,] further argued that ... Russell’s mortgage contract with ... First United Security Bank allows [it] to act as his attorney in fact when performing duties [Russell] has failed to perform; , therefore, [First United Security Bank] was aqting as [Russell’s] legal representative when paying his taxes and is consequently entitled to the excess under Ala.Code . [1975,] Section.4Qr10-28. The Supreme Court addressed this, argument in First Union National Bank when it agreed . with the County Commission’s argument in First Union National Bank that anything less than a clear statement of authority such as a power of attorney .from the owner to the mortgagee would be inadequate-to establish an agency or trustee relationship for a County trying to determine who should receive the excess funds fram; a tax s(ale.. In agreeing with this argument of the County Commission in First Union National Bank the Supreme.Court stated the following:
“ ‘We agree. with the Commission that, in the absence of a written instrument naming First Union as Sum- ■ mers’s legal representative, the trial court correctly held that First-Union cannot:claim the excess funds on that . basis,’
1 “Accordingly, the Court finds in favor of [McCollum, Cochrane,: and Russell] and against [First United Security Bank and Paty Holdings, LLC]. It is therefore the Order- of the Court-that the relief requested -by [First United Security Bank and Paty Holdings, LLC,] is hereby denied. It is the further order of the *370 Court that.Russell ... is entitled to the, refund of the excess funds from the tax sale at issue in this case. . Costs are taxed to.[First United Security Bank and Paty Holdings, LLC].” .
On May 80, 2012, First United Security Bank and Paty Holdings, LLC (hereinafter referred to collectively as “the bank”), Bled their notice of appeal. •

Discussion

On appeal, the bank argues that it is the “owner” of the property as contemplated by § 40-10-28, Ala.Code 1975, and, thus, that it is entitled to the excess funds from the tax 'sale. Section 40-10-28 provides:
“The excess arising from the sale of any real estate remaining after paying the amount of the decree of sale, and costs and expenses subsequently accruing, shall be paid over to the owner, or his agent, or to the person legally representing such owner, or into the county treasury; and it may be paid therefrom to such owner, agent or representative in the same manner as to the excess arising from the sale of personal property sold for taxes is paid. If such excess is not called for within three years after such sale by the person entitled to receive the same, upon the order of the county commission' stating the case or cases in which such excess was paid, together with a description of the lands sold, when sold and the amount of such excess, the county treasurer shall place such excess of money to the credit of the general fund of the county and make a record on his books of the same, and such money shall thereafter be treated as part of the general fund of the county.1 At any time within 10 years after such excess has been passed to thecred-it of the general fund of the county, the county commission may on proof made by any person .that t he is the rightful owner of such excess of money order the payment thereof to such owner, his heir or legal representative, but if not so ordered and paid within such time, the,, same shall become the property, of the . county.” .
In First Union National Bank of Florida v. Lee County Commission, 75 So.3d 105 (Ala.2011), our supreme court considered whether'a mortgagee of property sold for taxes could be considered the “owner” under § 40-10-28. Our supreme court determined that the term “owner” referred to the person against whom taxes were assessed and not,the mortgagee of the property. 75 So.3d at 114. In this case, the bank argues that it was no longer just the mortgagee but that, due to its purchase of the property at the foreclosure sale, it was the new owner of the property. The bank argues that inclusion in the statute of the language “person entitled to receive the [excess funds]” implies that the owner of the property may change between the time of the tax sale and the distribution of the excess funds. However, in First Union National Bank .the supreme court reasoned:
“Section 40-10-120(⅛, Ala.Code 1976, governs when land sold for unpaid taxes may be redeemed, and, more importantly, who may redeem it.
“ ‘Real estate which hereafter may be sold for taxes and purchased by the state may be redeemed at any time before the title passes out of the state or, if purchased by any other purchaser, may be redeemed at any time within three years from the date of the sale by the owner, his or her heirs, or personal representatives, or by any mortgagee or purchaser of such lands, or any part thereof, or by any person having an interest therein, or in any part thereof, legal or equitable, in sev-eralty or as tenant in common, including a judgment creditor or other cred *371 itor having a lien thereon, or on any part thereof.,..’
“(Emphasis added.) The list of those who can redeem property sold for taxes in § 40-10-120 is broader than the list of those entitled to claim excess proceeds under § 40 — 10—28[, Ala,Code 1975], The more expansive language in § 40-10-120. includes both ‘the owner’ and ‘any mortgagee,’ but the narrower language in § 40-10-28 includes only ‘the owner, or his agent, or ... the person legally representing such owner.’ The Commission argues that if the legislature separately named both owners and mortgagees in § 40-10-120, then it could not have intended for the term ‘owner’ in § 40-10-28 to include ‘mortgagee.’ We agree.”
75 So.3d at 112. Similarly, for purposes of the present case, we note that “[t]he more expansive language in § 40-10-120 includes both ‘the owner’ and ‘any [... purchaser but the narrower language in § 40-10-28 includes only ‘the owner, or his agent, or ... the person legally representing such owner.’” Id. (emphasis added). “[I]f the legislature separately named both owners and [purchasers] in §, 40-10-120, then it could not have intended for the term ‘owner’ in § 40-10-28 to include ‘[purchaser].’ ” Id. Thus, applying the reasoning espoused by our supreme court in First Union National Bank, we conclude that the excess funds are not payable to a person or entity who purchases property subsequent to a tax sale but, instead, are payable only to the person in whose name the taxes are assessed at the time of the tax sale (or his agent or representative).
The bank also points out that the supreme court stated in First Union National Bank that, if a mortgagee foredos-ed on property and purchased it at a foreclosure sale, it would become the owner of the property, and, thus, entitled to the excess funds. We note, however, that to be consistent with the above-quoted reasoning from First Union National Bank, that statement must be taken to mean that the foreclosure sale must have occurred before the tax sale. Furthermore, the supreme court stated in.First Union National Bank:
“A mortgagee could also require the mortgagor to execute a power of attorney as part of an agreement not to foreclose, or, if the mortgagee learns after the fact that property has been sold for taxes, it can require the owner . to execute a power of attorney before it redeems the property. The mortgagee could then become entitled to the excess proceeds under §. .40-10-28 as the person ‘legally representing such owner.’ ”
75 So.3d at 116. Based on that language, it is clear that the supreme court did not intend that a subsequent foreclosure sale could alter the “owner” of property under § 40-10-28.[1]
The bank also cites certain attorney general opinions that support its position; however,
“[u]nlike court opinions,
‘“written opinions of the Attorney General are not controlling. They are merely advisory and, under the statute, such opinions operate only to protect the officer to whom it is directed from liability because of any official act performed by such officer as directed or advised in such' opinions. [§ 36-15-19, Ala.Code 1975.]’ ”
Alabama Dep’t of Revenue v. National Peanut Festival Ass’n, 11 So.3d 821, 833—34 (Ala.Civ.App.2008) (quoting Broadfoot *372 v. State, 28 Ala.App. 260, 261, 182 So. 411, 412 (1938)).
The bank further argues that it should be entitled to the excess funds because, it says, returning those funds to the person who owned the property at the time of the tax sale would result in a windfall to that person. It further argues that, if a mortgagee who had foreclosed on property were unable to afford to redeem that property without the excess funds, the mortgagee would be forced to forfeit its rights to the property. As noted above, however, our supreme court noted in First Union National Bank that there are several contractual means by which a mortgagee can protect itself in such situations, such as requiring the mortgagor to execute a power of attorney in the mortgagee’s favor to collect the excess funds. 76 So.3d at 116.

Conclusion

Based on the foregoing, we affirm the judgment of the trial court.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.

. In any event, that case did not involve a foreclosure situation; thus, any statement regarding the effect of a foreclosure sale was nonbinding dicta. See, e.g., Ex parte Patton, 77 So.3d 591, 596 (Ala.2011).