REL: 09/26/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

## 1120302

_____

**Ex parte First United Security Bank and Paty Holdings, LLC**

**PETITION FOR WRIT OF CERTIORARI
TO THE COURT OF CIVIL APPEALS**

**(In re: First United Security Bank and Paty Holdings, LLC**

**v.**

**W. Hardy McCollum, Judge of Probate of Tuscaloosa County, et al.)**

(Tuscaloosa Circuit Court, CV-10-901031;
Court of Civil Appeals, 2110828)

1120302

MURDOCK, Justice.

This Court granted certiorari review to clarify our decision in First Union National Bank of Florida v. Lee County Commission, 75 So. 3d 105 (Ala. 2011), and to further address who is the "owner" entitled to recover excess funds received from the tax sale of real estate. We reverse and remand.

## I. Facts and Procedural History

First United Security Bank ("First United") and its wholly owned subsidiary, Paty Holdings, LLC (sometimes hereinafter referred to collectively as "the bank"), brought suit to recover excess funds received by Tuscaloosa County from the tax sale of real estate owned by Wayne Allen Russell, Jr., and on which First United had a mortgage. The bank foreclosed on its mortgage after the tax sale but before the demand for excess proceeds was made.

In their decision below, the Court of Civil Appeals stated the facts and the substance of the trial court's judgment as follows:

> "On December 30, 2010, First United Security Bank filed a verified complaint against W. Hardy McCollum, in his capacity as Tuscaloosa County Judge of Probate, and Peyton Cochrane, in his capacity as Tuscaloosa County Tax Collector, seeking, among other things, a judgment declaring that it was

2

entitled to the excess funds Tuscaloosa County received at the sale of the property for unpaid taxes. The complaint was later amended to add Russell as a defendant and Paty Holdings, LLC, as a plaintiff.

"The case was submitted to the trial court for a decision upon the parties' briefs and the following joint stipulation of facts:

"'....

"'4. On or about February 15, 2002, Wayne Allen Russell, Jr. ... executed a note and mortgage in favor of First United Security Bank .... Said mortgage was recorded in the Probate Records of Tuscaloosa County ....

"'5. On May 25, 2010, ... certain [parcels of land] subject to the bank's mortgage ... were sold at a tax sale due to unpaid 2009 property taxes.

"'6 & 7 [The two parcels at issue were sold for a combined amount of $42,000, of which $32,305.12 represents excess proceeds.]

"'8. ... First United Security Bank assigned its foreclosure bid rights to ... Paty Holdings, LLC. ... Paty Holdings, LLC was the highest bidder at [a] foreclosure sale [on July 8, 2010,] with a bid in the amount of $2,381,790.00 and recorded a foreclosure deed .... The bid amount equaled the amount of [Russell's] indebtedness to the bank.

"'....

"'10. ... W. Hardy McCollum as Tuscaloosa County Judge of Probate and Peyton Cochrane as Tuscaloosa County Tax Collector informed [First United Security Bank and Paty Holdings, LLC,] that [they] must pay the excess bids in order to redeem the property taxes but that [they] would not be entitled to a refund of the excess bids. Instead, [McCollum and Cochrane] asserted that the excess bids to be paid by [First United Security Bank and Paty Holdings, LLC,] will be made payable to ... Russell. ...

"'...'

"The parties subsequently stipulated that Black River Holdings, LLC, 'the current owner' of the property, had proposed to redeem the property and had assigned any rights it had to the excess funds to First United Security Bank. The parties also stipulated that the excess tax-sale proceeds were to be held pending the trial court's determination of the case.

"On May 25, 2012, the trial court entered a judgment, stating:

"'1. The primary issue in this case is ... between ... First United Security Bank and Paty Holdings, LLC, and ... Wayne Allen Russell, Jr. who qualifies as the "owner" or the "person legally representing such owner" under Ala. Code [1975,] Section 40-10-28. In First Union National Bank of Florida v. Lee County Commission[, 75 So. 3d 105] (Ala. ... 2011), the Alabama Supreme Court addressed this very issue when it concluded "that when the Legislature directs in Section 40-10-28[, Ala. Code 1975,] that the excess funds from a tax sale shall be paid over to the owner

4

or his agent," the term "owner" means "the person against whom taxes on the property are assessed." Under the Stipulated Facts of the parties, that person would be ... Wayne Allen Russell, Jr.

"'2. [First United Security Bank and Paty Holdings, LLC,] argue that the result in this case should be different from that in First Union National Bank, because unlike the mortgagee in First Union National Bank, there had been a foreclosure by the mortgagee in this case. Thus, in this case [First United Security Bank and Paty Holdings, LLC,] contend that as the foreclosing mortgagee, ... First United Security Bank is the full owner of the subject property. This argument would be persuasive if the foreclosure had occurred prior to the tax sale, as it is clear from the opinion in First Union National Bank that the Supreme Court was referring to a foreclosure which occurred prior to the tax sale and not after the tax sale as occurred in this case.

"'....

"'Accordingly, the Court finds in favor of [McCollum, Cochrane, and Russell] and against [First United Security Bank and Paty Holdings, LLC]. It is therefore the order of the Court that the relief requested by [First United Security Bank and Paty Holdings, LLC,] is hereby denied. It is the further order of the Court that ... Russell ... is entitled to the refund of the excess funds from the tax sale at issue in this case. Costs are taxed to [First United Security Bank and Paty Holdings, LLC].'"

1120302

<u>First United Sec. Bank v. McCollum</u>, [Ms. 2110828, Nov. 30,

2012] ___ So. 3d ___, ___ (Ala. Civ. App. 2012) (emphasis

added).

## II. Standard of Review

"Our standard of review is de novo: 'Because the issues presented by [this appeal] concern only questions of law involving statutory construction, the standard of review is de novo.  See <u>Taylor v. Cox</u>, 710 So.2d 406 (Ala. 1998).'  <u>Whitehurst v. Baker</u>, 959 So. 2d 69, 70 (Ala. 2006). ..."

<u>Ex parte Birmingham Bd. of Educ.</u>, 45 So. 3d 764, 767 (Ala.

2009).

## III. Analysis

The issue presented here is whether a purchaser at a

foreclosure sale is an "owner" entitled under Ala. Code 1975,

§ 40-10-28, to receive the excess proceeds from a tax sale of

the real property foreclosed upon.[1]  Section 40-10-28, as it

read at the time of the foreclosure and attempted redemption

in this case, provided, in pertinent part:

"The excess arising from the sale of any real estate remaining after paying the amount of the decree of sale, and costs and expenses subsequently accruing, shall be paid over to the owner, or his agent, or to the person legally representing such owner, or into the county treasury, and it may be

---

[1]Section 40-10-28 was amended while this case was pending. See note 2, infra.

6

> paid therefrom to such owner, agent or representative in the same manner as to the excess arising from the sale of personal property sold for taxes is paid. ..."

This provision does not define "owner" and does not, by its terms, impose any limitation on when the owner must have acquired its interest in the property in order to be eligible to receive the excess proceeds from a tax sale of the property.

In First Union National Bank of Florida v. Lee County Commission, 75 So. 3d 105 (Ala. 2011), this Court held that the term "owner" in § 40-10-28 meant "the person against whom taxes on the property were assessed," 75 So. 3d at 117, and that the term "owner" does not include a mortgagee who has not foreclosed on its mortgage. In reaching this conclusion, this Court noted (1) that the statute does not define the term "owner" and (2) that Ala. Code 1975, § 40-10-120(a), specifies a broader range of persons who are entitled to redeem the property from a tax sale. This Court then concluded that the different language in the two related statutes limits the breadth of the term "owner" in § 40-10-28 so as to exclude mere mortgagees.

This Court in First Union also rejected the argument that a mere mortgagee is an "owner" by virtue of the fact that Alabama is a "title" state in which the mortgagee holds legal title to property and the mortgagor holds only equitable title. This Court provided a thorough discussion of precedent, including Loventhal v. Home Insurance Co., 112 Ala. 108, 115, 20 So. 419, 420 (1896), in support of the proposition that "equitable title is more than an interest in property; it is ownership of the property." First Union, 75 So. 3d at 113.

Lastly, this Court in First Union rejected various policy and equitable arguments in favor of treating a mortgagee as an owner entitled to the excess proceeds, noting, among other things, that mortgagees have potential remedies regarding excess tax-sale proceeds. In this regard, we specifically made note of the mortgagee's ability to "foreclose upon the property, purchase it at the foreclosure sale, and thereby merge the equitable title with the legal title, thus becoming entitled to any excess funds." 75 So. 3d at 116 (emphasis added).

8

The bank argues that this case is distinguishable from First Union because First United foreclosed its mortgage before the demand for or the payment of the excess funds and thus became the "owner" by virtue of owning both legal and equitable title to the property. We agree.

The Court of Civil Appeals rejected the bank's argument, holding that First Union stands for the proposition that the excess funds "are payable only to the person in whose name the taxes are assessed at the time of the tax sale (or his agent or representative)." ___ So. 3d at ___ (emphasis added). In so doing, however, the Court of Civil Appeals erroneously added a temporal qualification to this Court's holding in First Union. This addition extends this Court's holding in First Union beyond its context and imposes a temporal element on ownership that is not found in the statute itself or in this Court's opinion in First Union. Nothing in First Union suggests that there is, or should be, a distinction between one who completes a foreclosure purchase (or other purchase for that matter) and becomes the "owner" of the property before a tax sale and one who completes a purchase after the

tax sale, but before the payout of any excess tax-sale proceeds.

The issue in First Union was not the timing of a sale or foreclosure, but whether a mere mortgagee -- with only a bare legal title to the property -- was an "owner" of the property. In First Union, the only claimants to the excess proceeds were a mortgagor/owner (who was also the owner listed on the assessment, and who apparently was still in possession of the property) and a mortgagee who had not foreclosed and who had only bare legal title.

The reference in First Union to "owner" as "the person against whom taxes on the property are assessed," 75 So. 3d at 114, was not intended to impose any temporal limitation on when a person must become an "owner" in order to be entitled to the excess proceeds. Nor was it intended to limit "owner" to the person or entity listed on the tax assessment, whether or not that person or entity is the actual owner at the time of the tax sale (and whether or not the owner was correctly listed on the assessment).

The Court of Civil Appeals' limitation of "owner" of the property to the person in whose name the taxes were assessed

10

at the time of the tax sale not only adds a temporal element not found in the statute, but also is contrary to (1) the ordinary meaning of the word "owner" (which does not ordinarily betoken a prior owner who does not retain any interest in the property at the time of the events at issue) and (2) the ordinary expectations of purchasers and sellers of real estate. Ordinarily, the conveyance of real property transfers not only the property itself but also all rights appertaining thereto, unless excepted. We see no reason not to include the right to receive the excess proceeds in the rights transferred. See W. Hereford and J. Haithcock, Money for Nothing: Who Is Entitled to the Excess Paid at a Tax Sale?, 73 Ala. Law. 424, 427 (2012) (seller of real estate ordinarily gives up all rights to the sold property, including the right to the excess proceeds); Ala. Op. Att'y Gen. 2011-087 (2011) (warranty deed normally conveys all rights in the property, including the right to excess proceeds); McGallagher v. Estate of DeGeer, 934 So. 2d 391, 40 (Ala. Civ. App. 2005) (right to rents and profits runs with the land).

Further, as noted above, the opinion in First Union specifically indicated that one of the possible remedies by

which a mortgagee could protect itself would be a foreclosure of the mortgage, thereby causing a merger of legal and equitable title in the foreclosure purchaser and a resulting entitlement to the excess proceeds. We see no reason to conclude that such a merger is any more complete when it occurs before a tax sale than when it occurs after it.

Finally, limitation of the term "owner" to the owner in whose name the taxes were assessed at the time of the tax sale often would lead to inequitable results. The "assessed owner" may not be the actual or equitable owner at the time of the tax sale, either because the property was sold between the October 1 assessment date and the date of the tax sale, or because the assessment was not changed after a sale to reflect the name of the new owner. In either of those instances, payment of the excess proceeds to the assessed owner would represent a windfall to the assessed owner and would unfairly penalize the purchaser/current/actual owner. The injustice is particularly acute if the current owner paid the excess proceeds in order to redeem the property, but the excess proceeds are then returned to the assessed owner, who did not

1120302

pay the taxes, did not contribute to the redemption amount, and no longer has any interest in the property.[2]

## IV.  Conclusion

Based on the foregoing, we conclude that the bank is entitled to the excess tax-sale proceeds.  We reverse the judgment of the Court of Civil Appeals and remand the case for further proceedings consistent with this opinion.

---

[2]While this case was pending, the legislature amended § 40-10-28 to provide that the excess tax-sale proceeds shall be paid to "a person or entity who has redeemed the property." Act No. 2013-370, Ala. Acts 2013 (emphasis added).  In addition to the argument made by the bank as to the meaning of § 40-10-28 as written at the time of the events at issue, the bank also argues that we should consider the amendment to § 40-10-28 to be retroactive and to apply to any property as to which the excess proceeds had not been paid out as of August 1, 2013, the effective date of that amendment.  The defendants disagree, contending that the amendment was intended to apply only to tax sales made on or after that date and, furthermore, that any other interpretation would upset settled expectations and would be unconstitutional.  Our judgment of reversal in favor of the bank in this particular case is not dependent on the bank's argument on this issue. Even if the bank were correct, in this case the entity actually attempting to redeem the property is also the "owner" of the property.

13

1120302

REVERSED AND REMANDED.

Stuart, Bolin, Parker, Shaw, Main, and Wise, JJ., concur.

Moore, C.J., concurs in the result.

Bryan, J., recuses himself.*

*Justice Bryan was a member of the Court of Civil Appeals when that court considered this case.